**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**-vs-**

**CODY BUTZER,**

**Defendant.**

**Case No. 5:26-CR-00255**

**JUDGE PAMELA A. BARKER**

**MEMORANDUM OPINION & ORDER**

This matter is before the Court upon Defendant Cody Butzer's ("Defendant" or "Butzer") Motion for Specified Relief from Unreasonable and Overly Burdensome Discovery Production and Incorporated Memorandum of Law filed on October 13, 2026 ("Defendant's Motion"). (Doc. No. 19.) On October 20, 2026, the United States of America ("the Government") filed its Response in Opposition to Defendant's Motion ("the Government's Response"). (Doc. No. 20.) On October 27, 2026, Butzer filed his Reply Brief in Support of Defendant's Motion ("Defendant's Reply"). (Doc. No. 21.) For the following reasons, Defendant's Motion is denied.

## I. Background

Butzer is charged with one count of Felon in Possession of Firearms and Ammunition in violation of 18 U.S.C. §§ 922(q)(1) and 924(a)(8) ("the charge"). (Doc. No. 1.)[1] Butzer entered a not guilty plea to the charge at his June 30, 2026 arraignment. On July 2, 2026, this Court entered a

---

[1] The Indictment alleges that after being convicted of crimes punishable by imprisonment for a term exceeding one year, (i.e., Aggravated Trafficking in Drugs and Felonious Assault, in 2007 and 2021, respectively) Butzer possessed the twenty-six firearms and ammunition identified in the Indictment, which had been shipped and transported in interstate commerce. (Doc. No. 1, PageID #s 13-15.) The Indictment also includes a Forfeiture provision for these twenty-six (26) firearms and ammunition. (*Id.*, PageID #s 15-17.)

Criminal Pre-Trial Order scheduling a final Pretrial Conference for August 20, 2026, a corresponding pretrial motions deadline of August 6, 2026, and a trial date of September 8, 2026. (Doc. No. 11.) On July 28, 2026, Butzer filed a Motion to Set Deadline for Production of Discovery and to Continue Pretrial Conference and Motions Deadline ("Defendant's Motion to Continue"). (Doc. No. 12.) Therein, Butzer represented the following:

> The charge arises from search warrants executed on Butzer's home and businesses on June 25, 2025. Based upon the affidavit submitted in support of a search warrant to conduct DNA testing, the Government recovered all of the firearms from the search of the businesses, but some firearm magazines and ammunition from the residence. In executing the search warrants, the Government also seized computers, smart phones, and other devices potentially storing terabytes of electronic information.

(Doc. No. 12, PageID #s 59-60.)

According to Butzer, prior to his arraignment he formally requested Rule 16 discovery and after the arraignment, the lead prosecutor agreed to provide the discovery and search warrant materials. (*Id.*, PageID # 60.) By an email dated July 7, 2026 directed to counsel for the Government, Defendant's counsel requested the "separate production of the material related to the search warrants executed during the investigation of Mr. Butzer and related entities, including upon premises located at 2700 Cory Avenue, Mr. Butzer's residence, and any third parties for electronically stored information sent or received by Mr. Butzer." (Doc. No. 12-1, PageID # 69.) Defendant's counsel asked that counsel for the Government advise him by end of the day on July 9, 2026 if there was any reason this material could not be produced separately on or before July 13, 2026. (*Id.)* Counsel for the Government did not respond until July 15, 2026, after Defendant's counsel sent another email on July 13, 2026 advising that since he had not received a response to his July 7, 2026 email, he would be seeking court intervention to secure the separate production of the search warrant materials described in his July 7, 2026 email. In her July 15, 2026 email, lead counsel for the Government

advised Defendant's counsel that she had been in trial and then was out on sick leave and would get the requested material to him as soon as she could. (*Id.*, PageID #s 68-69.) There were additional emails sent by and between Defendant's counsel and counsel for the Government concerning Defendant's request for the search warrant materials and the rest of the discovery, and the necessity for setting and deciding upon proposed new dates for the discovery deadline, final pretrial conference, and trial. (*Id.*, PageID #s 65-67.) Counsel for the Government did provide the search warrant materials to Defendant's counsel on July 22, 2026. (*Id.*, PageID # 66.)

As of the July 28, 2026 date of the filing of Defendant's Motion to Continue, Butzer had not yet received the rest of the discovery from the Government, which his counsel expected to "prove [to be] substantial given the volume of electronically stored information seized in the execution of the search warrants on [Butzer's] home and businesses." (Doc. No. 12, PageID # 62.) Since Butzer was still awaiting this discovery, he requested a continuance of the final pretrial conference date and the resulting pretrial motions deadline and proposed new dates for same. (*Id.*) In an email from counsel for the Government, Defendant's counsel was advised that there were "[n]o third party search warrants." (Doc. No. 12-2, PageID # 71.) Through a non-document order filed on July 29, 2026, the Court directed Butzer to supplement Defendant's Motion to Continue to include, in relevant part, a proposed new trial date. After Defendant's Supplement was filed on July 30, 2026, the Court entered an Ends of Justice order on July 31, 2026 setting the final pretrial conference for September 17, 2026 and the trial for October 6, 2026. (Doc. Nos. 13, 14.)

Then on August 13, 2026, the Government filed a Motion for 30-day Extension of Time to Provide Discovery as to Cody Butzer, asserting that "counsel for the Government recently learned that the electronic data in this case is nearly 10TB worth of data" and that because of this volume,

defense counsel is required to provide a hard drive for discovery and had promptly dropped off two hard drives on August 12, 2026 ("the Government's Motion"). (Doc. No. 15, PageID # 79.) On August 18, 2026, Butzer filed a Response to the Government's Motion ("Defendant's Response"). (Doc. No. 16.) Therein, Butzer argued that what he described as a "mountain of electronic discovery" and "massive production of discovery" was the result of "the blatant over-seizure of electronically stored information in the execution of the searches on [his] businesses and residence." (*Id.*, PageID # 82.) Butzer alerted the Court that he would be filing a motion requesting: 1.) an order requiring the Government to identify and separately produce known *Brady* material; 2.) early production of the government's exhibit list and the separate production of the documents on the exhibit list; and 3.) the early production of Jencks Act material.[2] (*Id.*, PageID # 82.) Indeed, Defendant's Motion that is the subject of this Memorandum Opinion and Order includes these very requests.

According to Butzer, the two hard drives provided to him by counsel for the Government, "largely contain the raw forensic images of fifteen computers, one external hard drive, four phones, and three tablets. (*See* Exhibit 1, ¶ 9, Declaration of Gregory Kelley, Archer Hall) ('Kelley Aff.')." (Doc. No. 19, PageID # 104, Doc. No. 19-1, PageID # 117.) According to Butzer, this is a "massive data dump [that] is produced in an unorganized and unsearchable format, and a conservative estimate of the time to review it linearly is 125,000 hours. [] (*Id.*)" (Doc. No. 19, PageID # 105, Doc. No. 19-

---

[2] Butzer noted that the granting of the Government's Motion would necessarily require resetting the final pretrial and trial dates. (*Id.*) Indeed, the Court agreed and during a status conference held on August 27, 2026 the Court granted the Defendant's request for a continuance of the final pretrial conference, jury trial and all deadlines associated therewith and issued an Ends of Justice Order on that same date. Importantly, too, at that August 27, 2026 status conference the Government provided Defendant's counsel with two hard drives containing 7 TB worth of data and therefore, the Government's Motion was denied as moot.

1, PageID # 118.)[3] Generally, Butzer asks for relief from what he submits is an "unreasonable discovery production that renders a practical impossibility [his counsel's] constitutional obligation to complete a document-by-document review to identify the relevant, material and favorable information buried therein." (Doc. No. 19, PageID # 105.)

In support of Butzer's request for an order requiring the Government to identify and separately produce known *Brady* material, Defendant's counsel cites and discusses "certain cases involving voluminous discovery" from district courts in D.C. and California. Based upon his review of these cases, Defendant's counsel has identified factors that he submits this Court should consider in evaluating his request and which when applied here, warrant this Court granting his request. (Doc. No. 19, PageID #s 107-08.) In further support of this request and again citing a California district court case, Butzer also argues that the discovery on the hard drives was provided in a raw, unorganized data dump of millions of documents, which is not in a searchable form. Butzer argues that he has limited resources to deal with this massive electronic discovery.

Butzer recognizes that in *United States v. Warshak*, 631 F.3d 266 (6th Cir. 2010), the Sixth Circuit "reject[ed] a *Brady* violation under the facts of that case." (Doc. No. 19, PageID # 124.) However, Butzer goes on to cite a portion of the Fifth Circuit Court of Appeals decision quoted by the Sixth Circuit in *Warshak*, to wit:

> We do not hold that the use of a voluminous open file can never violate *Brady*. For instance, evidence that the government 'padded' an open file with pointless or superfluous information to frustrate a defendant's review of the file might raise serious *Brady* issues. Creating a voluminous file that is unduly onerous to access might raise similar concerns. And it should go without saying that the government may not hide *Brady* material of which it is actually aware in a huge open file in the hope that the

---

[3] In the Declaration of Senior Director for Digital Forensics, Greg Kelley, attached as Exhibit 1 to Defendant's Motion, Mr. Kelley avers in relevant part that "[t]he date in its current form is not searchable." (Doc. No. 19-1, PageID # 118.)

> defendant will never find it. These scenarios would indicate that the government was acting in bad faith in performing its obligations under *Brady*.

*Warshak*, 631 F.3d at 297 (quoting *United States v. Skilling*, 554 F.3d 529, 577 (5th Cir. 2009), *vacated in part on other grounds*, 561 U.S. 358 (2020)).

In *Warshak*, the Sixth Circuit found that the government had not engaged in any conduct indicating that it had performed its *Brady* obligation in bad faith. *Warshak*, 631 F.3d at 297. In so finding, the Sixth Circuit concluded that there was no proof that the government had "larded its production with entirely irrelevant documents[,]" the government had not made access to the documents "unduly onerous[,]" and there was no indication that the government had deliberately concealed any exculpatory evidence in the information it gave to the defense. *Id.* at 297-98.

According to Butzer, though "[t]he situation in th[is] case fits squarely within the scenario of [c]reating a voluminous file that is unduly onerous to access." (Doc. No. 19, PageID # 110.) Butzer argues that "[w]hatever the culpability of the government's state of mind, [] producing 932 gigabytes of user data in a felon in possession prosecution is patently unreasonable."[4] (*Id.*) Butzer then asserts that *Warshak* and *Skilling* actually support his request because in those cases and unlike in this case, the government "made significant efforts to mitigate the burden on defendants." (*Id.*, PageID # 111.) Per Butzer, in *Skilling*, the government "provided the open file in a 'searchable format,' produced a set of 'hot documents' and an indices of documents produced; and in *Warshak*, the government "furnished the defense with 'detailed' inventory of searchable database of discovery; and the government separately produced its potential trial exhibits six weeks before trial." (*Id.*) In sum

[4] In footnote 4 of Defendant's Motion, Butzer notes that "*Warshak* primarily relies upon *Skilling* for its consideration of the bad faith of the prosecution. *See* 631 F.3d at 297. This aspect of *Skilling* has been subject to disagreement because it is directly contrary to controlling Supreme Court precedent. [Citations omitted.]" (Doc. No. 19, PageID # 110 fn4.)

Butzer urges this Court to "order in the interest of Justice the separate production of all known *Brady* material." (*Id.*, PageID # 112.)

Next, and based upon the arguments made in support of his request for an order requiring the Government to provide a separate production of *Brady* material, Butzer requests that this Court order the early and separate production of trial exhibits and the early production of the Government's witness list. According to Butzer, because the Government provided a "massive and disorganized data dump," specifically "data imaged from fifteen computers and eight other electronic storage devices[,]" it has made defense counsel's ability to locate any specific document "prohibitively difficult[,]" thereby justifying the relief Butzer seeks through the granting of Defendant's Motion. (*Id.*, PageID # 113.) And generally, Butzer requests the early disclosure of Jencks material. (*Id.*, PageID # 112.)

According to the Government, it "has diligently discharged--and exceeded—its discovery obligations under Criminal Rule 16 and federal law in this case." (Doc. No. 20, PageID # 120.) The Government submits that, in effect, Butzer and his counsel and IT expert have abdicated their responsibility to review the discovery on their own and instead, seek to transfer to the Government, their burden to develop Butzer's case for him. (*Id.*, PageID #s 120-21.) The Government asserts that this is so, even though "Butzer and his IT expert do not explain what efforts they have undertaken to review the materials thus far, or whether any alternatives exist to a document-by-document review of every data point produced." (Doc. No. 19, PageID # 121.) The Government, citing *Warshak* and several of this Court's decisions,[5] contends that "[c]aselaw forecloses [Butzer's] request." (*Id.*) The

[5] The cases from this Court cited by the Government are: *United States v. Rakhit*, No. 1:18-cr-33, Doc. 174 at 13 n.6 (July 20, 2021) (Barker, J.); *United States v. Dimora*, 2011 WL 5082227, at *3 n.4 (N.D. Ohio Oct. 25, 2011); *United*

Government contends that it has acted in good faith, points out that all the at-issue discovery concerns devices found in Butzer's own home and business and therefore, is Butzer's own data, admittedly just in a different format. (*Id.*) And the Government directs this Court's attention to its prior decision in *United States v. Bailey*, 2022 WL 1261766, at *5 (N.D. Ohio Apr. 28, 2022) (Barker, J.); *cf.* Mot. 6. N. 2., for its proposition that "this Court has rejected much narrower requests to merely make voluminous discovery productions more *searchable*—a far cry from the extraordinary request by Butzer here." (*Id.*)[6]

The Government acknowledges that this case involves a "more extensive disclosure of potentially relevant materials" because the initial investigation of Butzer and his business involved several other offenses that were not ultimately charged. (Doc. No. 20, PageID # 122.) The Government then represents that therefore, in order "to accommodate the defense in accordance with the deadlines set by this Court and federal law, the government has continuously produced discovery to Butzer and his counsel while offering support in *navigating* the discovery." (*Id.*, Emphasis added.)

The Government has submitted evidence that once it knew that the electronic data requested was nearly 10TB worth of data, (1) on August 10, 2026, the Government "offered to get a file list/general idea from FBI cart as to the data specifics of the devices[;]" (2) that in an August 28, 2026 letter to Butzer's counsel, counsel for the Government advised him that an index of the discovery materials had been uploaded onto one of the hard drives turned over to him during the

---

*States v. Mohammad*, 2012 WL 1605472, at *2 n.3 (N.E. Ohio May 8, 2012); and *United States v. Cole*, 2021 WL 5353931, at *2 (N.D. Ohio Nov. 17, 2021).

[6] The Government is correct in its evaluation of this Court's rejection of narrower requests to make voluminous discovery productions more searchable; but again, Defendant's IT expert has opined that the discovery in its current form provided by the Government is "not searchable" at all. (Doc. No, 19-1, PageID # 118.)

August 27, 2026 hearing; and (3) that throughout the discovery process, counsel and discovery personnel for the Government have promptly responded to any questions or concerns about discovery raised by defense counsel. (Doc. Nos. 20-2, 20-3 and 20-4.) According to the Government, the physical devices seized from Butzer's home and business have always been accessible to Butzer and his counsel for review, and upon request they will be made available to them if they "prefer to review these devices in that manner rather than review the data files." (Doc. No. 20, PageID # 122.)

The Government argues that Butzer has not even alleged, much less demonstrated, any bad faith on the part of the Government and that is because there is none. The Government contends that Butzer has not demonstrated how the discovery is unduly onerous to access. The Government highlights the fact that Butzer and his IT expert have not explained what efforts they have undertaken to access and review the materials and that the Government and its personnel have repeatedly offered to trouble shoot any problems regarding discovery. (Doc. No. 20-4.) And the Government contends that Butzer is not entitled to notice of the Government's trial strategy by the early disclosure of the Government's witness list and exhibit list just because he claims that the discovery included on his own devices that he would be more familiar with, is voluminous. The Government indicates that it will not oppose a continuance of the trial to allow more time for Defendant to access the discovery produced.

In Defendant's Reply, Butzer reemphasizes that the discovery produced by the Government is a "raw electronic data dump" associated with fifteen computers and eight other storage devices and submits that "it contains millions of documents that bear no relevance to the discrete charge in this

case."[7] (Doc. No. 21, PageID # 148.) Butzer directs this Court's attention back to the "block quote in the body of the Sixth Circuit's opinion [in *Warshak*]" that he asserts "should lead to relief on this Motion." (*Id.*, PageID # 150.) Butzer takes issue with the Government's position that as used in *Warshak* and *Skilling*, the term "access" means "to get into the file to review the material" because if that is what it means, then "it would not matter whether the file was 'voluminous' or not – nothing could be reviewed." (*Id.*, PageID # 151.) Butzer contends that what was at issue in *Warshak* "was 'capably *navigating* the discovery' – not the ability to review the documents at all." (*Id.*, PageID # 152. Emphasis added.)

Butzer argues that bad faith can be imputed to the Government because of the choices it has made, to include in its "misguided opposition to the Motion for Specified Relief" and that he "should not be tasked with proving what lies in the government's hearts and minds." (*Id.*) Butzer takes issue with the Government placing emphasis on the fact that the discovery comes from his own devices with which Butzer should be familiar, by representing that to his counsel's understanding "the devices imaged exceed what belong to him and for which he has familiarity." (*Id.*) Beyond that, according to Butzer, the issue is not whether he has familiarity with the material on the devices, but "the difficulty for his counsel in locating the limited material conceivably relevant to the trial of this case in a vast mass of irrelevant material." (*Id.*)

Butzer urges this Court to follow the cases he cited and discussed in Defendant's Motion (and the Government correctly described as "out-of-circuit cases"[8]) because "they present more in-depth

---

[7] It is unclear to the Court how Butzer can make this representation when he has also argued that the Government has made access to the documents unduly burdensome. In other words, to reach the conclusion that millions of documents bear no relevance to the case, presupposes a review of those millions of documents.

[8] (Doc. No. 20, PageID # 126.)

analysis of the issue from federal district court judges than the cases the Government cites," specifically those decided by this Court. (*Id.*, PageID # 153.) And in response to what he describes as the Government giving "particular emphasis to *United States v. Cole* [citation omitted]" Butzer points out that in denying *Brady* identification, the Court "relied upon the organization of the production 'in a navigable format, separated into sub-folders and labeled with bates ranges." (*Id.*, PageID # 154.) According to Butzer and by contrast here, "there is no organization and no meaningful assistance with locating specific evidence in the electronic morass of data." (*Id.*) Butzer claims that the file index provided for the second production by the Government "is of limited to no use." (*Id.*) Butzer asserts that this case is a markedly stronger case for *Brady* than *Cole* because of "the degree to which the hard drives include 'pointless or superfluous information.'" (*Id.*) Butzer urges this Court to order the early and separate production of trial exhibits and a witness list, pointing this Court to the Court's decision in *Cole* where Judge Gwin ordered the government to provide the defendant with a preliminary list of trial exhibits about six weeks prior to trial. Butzer acknowledges the Government's offer to not oppose the continuance of the trial date to help ameliorate the burden of reviewing the discovery but notes that the years necessary to go through the discovery would require the forfeiture of his right to a speedy trial.

## II. Law and Analysis

Rule 16 of the Federal Rules of Criminal Procedure governs discovery in criminal cases. It provides in relevant part as follows:

> Upon a defendant's request the government must permit the defendant to inspect and to copy … papers, documents, data, … or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> (i) the item is material to preparing the defense;
> (ii) the government intends to use the item in its case-in-chief at trial; or

(iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E).

"[D]iscovery afforded by Rule 16 is limited to the evidence referred to in its express provisions." *United States v. Presser*, 844 F.2d 1275, 1285 (6th Cir. 1988). *Brady v. Maryland*, 373 U.S. 83 (1967) imposes an obligation on the government "to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment." *Presser*, 844 F.2d at 1281. However, according to the Sixth Circuit, the government is not obligated to identify favorable evidence within disclosed discovery. *Warshak*, 631 F.3d at 297-98. "The government only fails to meet its obligations under *Brady* if it suppresses material impeachment or exculpatory evidence." *Cole.* 2021 WL 5353931 at *2(citing *Strickler v. Greene*, 527 U.S. 263, 280-82 (1999)).

Even where the government has produced millions of pages of evidence, unless bad faith on the part of the government is shown, it cannot be said that the government has failed to meet its obligations under *Brady*. *Warshak*, 631 F.3d at 297. The government's actions that might demonstrate bad faith and therefore a *Brady* violation include: 1.) the government "lard[ing] its production with entirely irrelevant documents[;] 2.) "the government mak[ing] access to the documents *unduly* onerous[;] and 3.) indications that the government deliberately concealed any exculpatory evidence in the information it turned over to the defense." *Id.*, at 297-98.

Butzer has not demonstrated that the government has "larded" its production with entirely irrelevant documents. While Butzer claims that the Government does not directly address why the discovery production is so large, the Court notes that the Government has explained that the initial investigation of Butzer and his business involved several other offenses that were not ultimately charged and that is the reason that there was a more extensive disclosure of potentially relevant

materials. Also, Butzer has not demonstrated that the Government has concealed any exculpatory evidence in the discovery provided to him. Butzer seems to concede that he has not provided evidence of bad faith because he cannot look into the "hearts and minds" of the Government. But Butzer contends that an inference of bad faith sufficient to find a *Brady* violation absent granting his request, has been demonstrated just from the circumstances involved in this matter. (Doc. No. 21, PageID # 6.)

This Court reads Defendant's Motion and Defendant's Reply as arguing that the nature, form, and extent of the discovery produced has made it "unduly burdensome" for Butzer to access. He maintains that it is unsearchable, as his IT expert has opined. Indeed, in discussing *Warshak* and *Cole,* Butzer argues that no *Brady* violation was found and no separate production of *Brady* material was ordered, because the discovery produced by the government was in a navigable format. This Court is unsure whether saying that the electronic discovery is not "searchable" is the same as saying it is not navigable. The Court makes this point because the Government represents that it has offered to assist Defendant with navigating the discovery produced. Indeed, the Government has also offered: 1.) to get a file list/general idea from FBI cart as to the data specific of the devices; and 2.) to make the devices accessible to Defendants. Also, the Government represented that an index of discovery materials had been put onto one of the hard drives given to Defendant's counsel.

Stated succinctly, to the extent that Butzer has filed Defendant's Motion and asked this Court to order the Government to affirmatively identify and disclose all *Brady* materials, trial exhibits, and witness lists, Butzer must concede, and the Court must believe, that the Government has been able to search and/or navigate the voluminous discovery it has provided to Butzer, meaning that it is navigable. Indeed, presumably the Government navigated the discovery to determine that Butzer

would only be charged with one offense, as opposed to a number of offenses that the Government thought would be uncovered when it started the investigation into Butzer and his business. And since the Government has been able to navigate the discovery, the Court has to believe that taking the Government up on its offers of assistance will aid Butzer to capably navigate it.

Therefore, and because the Court finds that Butzer has not shown that he does not have access to the voluminous discovery provided to him because it is not navigable, the Court denies Defendant's Motion, without prejudice. The Court orders the parties and their IT personnel and/or expert to meet and confer in person[9] to see if they can agree upon a way to assist Butzer and his counsel and IT expert to make the voluminous discovery searchable or navigable so as to attempt to ensure that accessing the discovery is not unduly burdensome upon Butzer. At the status conference set for November 19, 2026 the parties should be prepared to discuss the timing of the meet and confer and the impact of the required meet and confer on the Final Pretrial and Trial dates set in this matter.

**IT IS SO ORDERED.**

*s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE

Date: November 18, 2026

[9] If Butzer's IT expert, Mr. Kelley is located outside the Northern District of Ohio, then he may appear by Zoom at the meet and confer.